Mary Jo O'Neill, AZ Bar No. 005924
James P. Driscoll-MacEachron, AZ Bar No. 027828
William R. Hobson, AZ Bar No. 006887
**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Phoenix District Office**
3300 North Central Ave., Suite 690
Telephone: (602) 535-0412
Fax: (602) 640-5071
Email: mary.oneill@eeoc.gov
james.driscoll-maceachron@eeoc.gov
william.hobson@eeoc.gov

Attorneys for Plaintiff
EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission,<br><br>Plaintiff,<br><br>vs.<br><br>Rainbow Tree LLC d/b/a Persian Room Fine Dining<br><br>Defendant. | **CIVIL ACTION NO.**<br>**COMPLAINT**<br>**(JURY TRIAL DEMAND)** |

## NATURE OF THE ACTION

This is an action brought under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and retaliation and to provide appropriate relief for Charging Party Samantha Labrado. As alleged with greater particularity in the paragraphs below, Defendant Rainbow Tree LLC dba Persian Room Fine Dining ("Persian Room") subjected Labrado

to discrimination based on sex and retaliated against her during her employment. Nasser Nikkhahmanesh, an owner and manager of the Persian Room, repeatedly touched Ms. Labrado and made sexual comments to her and about her, including telling someone in her presence that he and Labrado were having sex. Within days of Labrado rebuffing multiple advances from Nikkhahmanesh, Persian Room retaliated against Labrado by disciplining her for tardiness despite her having received permission to arrive late and cutting Labrado's weekly work shifts from five to one. After Labrado made a written complaint about sexual harassment and retaliation, Persian Room further retaliated against Labrado by terminating her employment.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to § 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of Arizona, which is where venue lies.

**PARTIES**

3. The Equal Employment Opportunity Commission is the agency of the United States of America charged with the administration, interpretation, and

enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4. At all relevant times, Persian Room has been headquartered in the State of Arizona, has continuously been doing business in the State of Arizona in the cities of Phoenix and Tucson, Arizona, and has continuously had at least 15 employees.

5. At all relevant times, Persian Room has employed approximately 45 to 52 people.

6. At all relevant times, Persian Room has been an employer continuously engaged in an industry affecting commerce under §§ 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Samantha Labrado filed a charge with the Commission alleging violations of Title VII by Persian Room.

8. The Commission provided Persian Room with notice of the charge of discrimination.

9. On June 20, 2018, the Commission issued to Persian Room a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Persian Room to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission provided Persian Room with an opportunity to remedy the discriminatory practices described in the Letter of Determination.

11. The Commission was unable to secure a conciliation agreement acceptable to the Commission from Persian Room.

12. On August 7, 2019, the Commission issued a Notice of Failure of Conciliation to Persian Room.

13. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF FACTS

14. At all relevant times, Persian Room has been owned by Nikkhahmanesh and a silent partner named Joseph Azin.

15. Nikkhahmanesh's conduct described in this Complaint occurred in his role as manager and owner of Persian Room.

16. Nikkhahmanesh is and was heavily involved with day to day operations of Persian Room at both the Phoenix and Tucson locations.

17. At all relevant times, Ziwar Burtamekh ("Mr. Z") was a manager for the day shift at the Phoenix location.

18. At all relevant times, Eric Peek was a manager for the night shift at the Phoenix location.

19. At all relevant times, Mr. Z and Peek had the ability to hire, fire, and discipline employees.

20. At all relevant times, Mike Fazlollahi was a server and captain for the

Phoenix location, and he had management responsibilities including the ability to hire and fire.

21. At all relevant times, Fazlollahi posted the schedules on Sundays for the staff of the Phoenix restaurant.

22. Persian Room hired Labrado as a bartender in Phoenix in March 2017.

23. Labrado regularly worked the night shift, and Fazlollahi and Peek typically supervised her.

24. No later than late 2017, Labrado began to feel disturbed when interacting with Nikkhahmanesh.

25. Nikkhahmanesh's office was in the kitchen, but, over time, he increasingly would be found at Labrado's work station for 15 to 30 minutes at a time.

26. Nikkhahmanesh would often strike up conversations with her that made her uncomfortable.

27. Nikkhahmanesh persistently inquired into Labrado's personal life, and he complimented her appearance.

28. Nikkhahmanesh would frequently ask Labrado personal questions, such as whether she had a boyfriend or if she was married.

29. Nikkhahmanesh would also often tell her that she looked very pretty.

30. At one point, Nikkhahmanesh complimented Labrado on her skin color, telling her she would fit in well with Persians.

31. On another occasion Nikkhahmanesh told Labrado about a bartender's convention in Las Vegas and talked about taking her there with him, and Labrado

worried about what Nikkhahmanesh wanted to do with her there.

32. Labrado said no, telling Nikkhahmanesh she couldn't afford the time away from work.

33. Nikkhahmanesh would frequently reach over and touch Labrado's arm or shoulder when he talked to her, which made her uncomfortable, particularly when paired with the subjects Nikkhahmanesh wanted to talk about.

34. Labrado would pull away and move away to parts of the room which positioned tables or parts of the bar between them.

35. Although Labrado was distressed about these comments and conduct, Labrado did not complain to Nikkhahmanesh or any other member of management because he was the owner and she did not want to put her job in jeopardy.

36. On March 28, 2018, Nikkhahmanesh asked Labrado if she would assist with a party on March 30, 2018 in a not-yet-opened Persian Room location in Tucson.

37. The party was for an important repeat customer, who asked to have a special party at the restaurant prior to the official opening.

38. Nikkhahmanesh told Labrado they would drive down with Nikkhahmanesh's sister, and Labrado agreed to travel from Phoenix to Tucson with them.

39. The day of the trip, Labrado discovered that Nikkhahmanesh's sister and his sister's husband were traveling in a separate car.

40. The change made Labrado nervous, but Labrado agreed to ride with Nikkhahmanesh with the understanding that they would return to Phoenix that evening.

41. During the drive, Nikkhahmanesh's sister called him to ask where they were, apparently believing that she had passed them.

42. Labrado heard Nikkhahmanesh tell his sister that he and Labrado had pulled to the side of the road to have sex real quick and that he is trying to get with the girl next to him.

43. Labrado was shocked and told Nikkhahmanesh that he was making her uncomfortable.

44. Nikkhahmanesh responded that he was only joking.

45. Nikkhahmanesh then pointed out a sex store out of the blue around when they passed Picacho Peak.

46. Nikkhahmanesh also told Labrado about his massage techniques. Labrado was embarrassed and she tried to change the subject.

47. Nikkhahmanesh's behavior and comments throughout the drive were unwelcome and made Labrado uncomfortable.

48. Once they arrived in Tucson, Nikkhahmanesh, his sister, brother-in-law, and Labrado began setting up for the party.

49. Nikkhahmanesh approached Labrado and put his arm around her shoulder. He told Labrado he needed to ask her a question, and he then told Labrado how nice the local Marriott hotel was and described the jacuzzi that was there.

50. He asked her if she would like to join him there for the night.

51. Labrado rejected his offer.

52. Nikkhahmanesh then stated that it was a joke.

53. However, throughout the night, Nikkhahmanesh kept hinting to Labrado about how tired he was and that he did not want to drive back to Phoenix that night.

54. Labrado told Nikkhahmanesh that she agreed to ride down with him because she understood that they would return to Phoenix once the party was over.

55. Later in the evening, Nikkhahmanesh put his arm around Labrado again and asked his sister, “Don’t we look good together?”

56. In Labrado’s presence, Nikkhahmanesh also said, “Isn’t [Labrado] awesome? I just want to put her on ice and keep her forever.”

57. Nikkhahmanesh’s comments embarrassed Labrado and made her uncomfortable.

58. Nikkhahmanesh’s behavior and comments throughout the evening were unwelcome and made Labrado increasingly distressed.

59. Before riding back to Phoenix, Nikkhahmanesh told Labrado that he was looking forward to talking with Labrado in the car ride again. Labrado responded that she was tired and thought she would likely fall asleep.

60. Nikkhahmanesh then said, “Good, that means I can do whatever I want to you and you will never know.”

61. Labrado reacted with disgust and said “Hell no!” to Nikkhahmanesh.

62. Nikkhahmanesh laughed and said, “I love playing with you.”

63. Nikkhahmanesh’s conduct made Labrado anxious, distressed, and extremely uncomfortable.

64. Labrado was wary and anxious and feigned falling asleep on the trip back

to Phoenix.

65. Labrado was hesitant to complain to other managers at Persian Room because Nikkhahmanesh was an owner. Labrado did not want to put her job in jeopardy.

66. After she rejected the advances of Nikkhahmanesh, however, the conditions of Labrado's employment began to change.

67. On April 5, 2018, Mr. Z wrote Labrado up for being late.

68. Labrado told Mr. Z that Fazlollahi had given her permission to show up later for her scheduled shift, but Mr. Z did not rescind the write-up.

69. Mr. Z did not indicate that Labrado's tardiness had been an issue in the past, nor had Labrado ever been warned or disciplined about tardiness previously.

70. Labrado and Peek signed the write-up notice.

71. This was the first discipline Labrado had received since she began work at Persian Room in March of 2017.

72. On April 8, 2018, Fazlollahi posted the week schedule for the next week.

73. Labrado was assigned only one shift instead of her usual five.

74. Labrado received no warning of the change in her schedule.

75. Labrado asked about the change, and Mr. Z and Fazlollahi told her that this arose from an event involving a customer two months before.

76. As the conversation continued with Mr. Z and Fazlollahi, neither suggested changing how to deal with difficult customers but instead indicated she needed to get on good terms with Nikkhahmanesh to get her shifts back.

77. During the conversation, Mr. Z and Fazlollahi repeatedly told Labrado that

they did not have an issue with her.

78. Mr. Z and Fazlollahi said that Nikkhahmanesh would be the one that would make the decision about whether to put her back on the schedule full time.

79. On April 11, 2018, she complained to Mr. Z and Fazlollahi about the sexual harassment she suffered on March 30, 2018.

80. Labrado prepared a written statement that she read and provided to Mr. Z and Fazlollahi.

81. In response to her complaint, Mr. Z and Fazlollahi now denied that Labrado was taken off the schedule at the direction of Nikkhahmanesh, but Mr. Z and Fazlollahi also told Labrado to leave a copy of her written complaint so that they could show it to Nikkhahmanesh.

82. Mr. Z and Fazlollahi repeatedly stated that they did not know what to do with her complaint.

83. Labrado concluded the conversation by stating that she intended to work her shift.

84. Mr. Z and Fazlollahi said that she could work her shift.

85. However, approximately one hour later, Fazlollahi told Labrado to leave.

86. By that time, Peek had arrived to work the night shift.

87. Labrado told Peek that she had been fired by Fazlollahi.

88. Mr. Z and Peek told her repeatedly that she needed to speak with Nikkhahmanesh and that she needed to leave the Persian Room.

89. Peek also told Labrado that the decision for her to leave had come from

Nikkhahmanesh.

90. Labrado requested documentation of her termination but was told that there would not be anything in writing.

91. Peek then spoke to Nikkhahmanesh, who confirmed that Labrado needed to leave work.

92. Persian Room wrote Labrado up again that same day. The write up states that "Sam [Labrado] received customer complaints & tardy for scheduled shifts, Sam is know [sic] longer employed at the Persian Room."

93. Labrado did not sign this second write up form.

94. Upon information and belief, Persian Room never investigated the complaint Labrado made to Persian Room.

## STATEMENT OF CLAIMS

### Count I: Sexual Harassment 42 U.S.C. § 2000e-2(a)

95. The allegations in the foregoing paragraphs are incorporated by reference.

96. Since at least late 2017, Persian Room has engaged in unlawful employment practices in violation of § 703(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) prohibiting sexual harassment.

97. At all relevant times, Nikkhahmanesh is and was an owner and manager of Persian Room.

98. Nikkhahmanesh frequently sought out Labrado at work and asked her personal questions, made comments about her appearance, reached over and touched

her during conversations, and suggested they go to Las Vegas together.

99. Nikkhahmanesh's attention was unwelcome, and, despite Labrado's efforts to avoid his attention, he persisted in his behavior towards her.

100. On March 30, 2018 Nikkhahmanesh made repeated sexual advances to Labrado over the course of the afternoon and evening when he made comments to Labrado about:

a. having sex with Labrado,

b. his skills as a masseuse,

c. suggesting they stay the night at the Tucson Marriot hotel and use its jacuzzi,

d. her appearance,

e. and their appearance as a couple.

101. On March 30, 2018, Nikkhahmanesh repeatedly touched and put his arm around Labrado.

102. Nikkhahmanesh's repeated and persistent sexual advances were unwelcome and made Labrado feel uncomfortable, distressed, and trapped.

103. Labrado rebuffed each of Nikkhahmanesh's advances.

104. Additionally, in rejecting Nikkhahamanesh's advances Labrado was disturbed and anxious about her job because he was a manager and an owner of the Persian Room.

105. Labrado suffered the consequences of saying no to Nikkhahamanesh shortly after she returned to Phoenix.

106. Six days later after her return to Phoenix, on April 5, 2018, Labrado was written up for tardiness for the first time ever in more than a year of employment.

107. Labrado was disciplined only six days after she refused Nikkhahmanesh's advances.

108. Three days later and only nine days after Labrado opposed Nikkhahmanesh's advances, Persian Room dramatically reduced Labrado's schedule, cutting her weekly work shifts from five to one. As a result, her work hours and income were significantly reduced.

109. When Labrado complained to Persian Room management, they made clear that the change was because of Nikkhahmanesh and only Nikkhahmanesh would decide if she could get back on a regular schedule.

110. Persian Room, at the direction of Nikkhahmanesh, then terminated Labrado on April 11, 2018.

111. Persian Room, through its owner and manager Nikkhahmanesh, subjected Labrado to sexual harassment.

112. Nikkhahmanesh made clear through his conduct and through the actions he took against Labrado after March 30, 2018 that accepting his advances was a condition of her employment.

113. Persian Room, at the direction of Nikkhahmanesh, took tangible employment actions against Labrado because Labrado did not accept his advances.

114. The effect of the practices complained of in the foregoing paragraphs above has been to deprive Labrado of equal employment opportunities and otherwise adversely affect her status as an employee.

115. The unlawful employment practices complained of in the aforementioned paragraphs were intentional.

116. The unlawful employment practices complained of in the aforementioned paragraphs above were done with malice or with reckless indifference to the federally protected rights of Labrado.

**Count II:**
**Retaliation**
**42 U.S.C. § 2000e-3(a)**

117. The allegations in the foregoing paragraphs are incorporated by reference.

118. Since at least March 30, 2018 Persian Room has engaged in unlawful employment practices in violation of § 704 of Title VII, 42 U.S.C. § 2000e-3 by retaliating against Labrado for her opposition to Persian Room's unlawful employment practices.

119. Labrado opposed the March 30, 2018 advances of Nikkhahmanesh as owner and as manager of Persian Room.

120. On April 5, 2018, less than a week later, Persian Room wrote up Labrado for the first time since she began work at Persian Room.

121. Persian Room issued Labrado a formal write-up less than a week after she opposed Nikkhahmanesh's advances despite the fact that Labrado had not been

previously counseled, had no disciplinary history, and had been given permission to arrive late by a manager.

122. On April 8, 2018, only nine days after Labrado opposed Nikkhahmanesh's advances, Persian Room dramatically reduced Labrado's schedule, cutting her weekly work shifts from five to one. As a result, her work hours and income were significantly reduced.

123. On April 11, 2018, Labrado complained to Persian Room managers Mr. Z and Fazlollahi orally and in writing about sexual harassment by Nikkhahmanesh.

124. Persian Room management responded approximately an hour later by telling her that she had to leave the restaurant.

125. Persian Room drafted a write-up the same day that said Labrado "know(sic) longer works for Persian Dining."

126. Labrado's rejection of Nikkhahmanesh's advances and her complaints to Persian Room management were protected activities.

127. Persian Room disciplined Labrado, reduced her weekly schedule from five shifts to one, and terminated her because of her protected activities.

128. The effect of the practices complained of in the foregoing paragraphs above has been to deprive Labrado of equal employment opportunities and otherwise adversely affect her status as an employee because of her opposition to unlawful employment practices described above.

129. The unlawful employment practices complained of in the aforementioned paragraphs were intentional.

130. The unlawful employment practices complained of in the aforementioned paragraphs above were done with malice or with reckless indifference to the federally protected rights of Labrado.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully prays that this Court:

A. Grant a permanent injunction enjoining Persian Room, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from engaging in any employment practice that discriminates on the basis of sex.

B. Grant a permanent injunction enjoining Persian Room, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it from retaliating against any person engaging in activities protected by Title VII.

C. Order Persian Room to institute and carry out policies, practices, and programs that provide equal employment opportunities for all persons regardless of sex and which eradicate the effects of its past and present unlawful employment practices.

D. Order Persian Room to make Samantha Labrado whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

E. Order Persian Room to make Samantha Labrado whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F. Order Persian Room to make Samantha Labrado whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including emotional pain, suffering, inconvenience, and humiliation, in amounts to be determined at trial.

G. Order Persian Room to pay punitive damages to Samantha Labrado for its intentional, malicious and reckless conduct, as described above, in amounts to be determined at trial.

H. Grant to the Commission such further relief as the Court deems necessary and proper in the public interest.

I. Award the Commission its taxable and recoverable costs of this action.

## JURY TRIAL DEMAND

131. The Commission requests a jury trial on all questions of fact raised by its complaint.

RESPECTFULLY SUBMITTED this 28th day of August, 2019

SHARON FAST GUSTAFSON
General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

131 M Street NE, 5th Floor
Washington, DC 20507-0004

MARY JO O'NEILL
Regional Attorney

JAMES DRISCOLL-MACEACHRON
Supervising Trial Attorney

*_/s/ William R. Hobson_*
WILLIAM R. HOBSON
Trial Attorney
WILLIAM R. HOBSON
Trial Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Phoenix District Office
3300 North Central Avenue, Suite 690
Phoenix, Arizona
85012